# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ACOSTA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>ALI SADIK,<br><br>　　　　　　Defendant.<br>_____/ | Case No. 1:17-cv-01533-DAD-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART AND ORDER VACATING HEARING**<br><br>(Doc. 27)<br><br>**OBJECTIONS DUE: 21 DAYS** |

### I.　　INTRODUCTION

On August 1, 2018, Plaintiff Jose Acosta ("Plaintiff") filed a motion for default judgment against Defendant Ali Sadik ("Defendant"). (Doc. 27.) No opposition to Plaintiff's motion was filed. The Court has reviewed the motion and supporting documentation and determines that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g). As such, the hearing on the motion set for September 5, 2018, shall be VACATED.

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's motion for default judgment be GRANTED IN PART in the amount of $2,127.86.

### II.　　FACTUAL BACKGROUND

On November 16, 2017, Plaintiff filed a complaint against named defendants Juan Damian dba El Parian Grocery Mart, Ali Sadik, and John Kojigian, Jr., pursuant to Title III of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; the California Unruh Act, California Civil Code § 51 *et seq.*; and California Health & Safety Code §§ 19955, 19959. (Doc. 1 (the "Complaint").) The Complaint seeks an award of statutory damages, prejudgment interest on the damages, costs of suit, attorney's fees, and injunctive relief. *Id.* Plaintiff alleges that he requires the use of a wheelchair or cane for mobility (Doc. 1, ¶ 8), and the property that is the subject of this suit, El Parian Grocery Mart (the "Property"), presents numerous architectural barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property (Doc. 1, ¶ 10).

Defendant Juan Damian ("Damian") was served with the Complaint on November 26, 2017. (Doc. 4), and Plaintiff voluntary dismissed with prejudice his claims against Damian on March 28, 2018, pursuant to a settlement. (*See* Docs. 12, 18, 21.) Defendants John Kojigian, Jr. ("Kojigian") and Ali Sadik were served with the complaint on January 17 and 19, 2018, respectively. Plaintiff requested the Clerk of Court to enter default against those defendants on March 15, 2018, which was entered on March 16, 2018. (Docs. 13, 14, 15.) Plaintiff and Kojigian thereafter agreed to set aside the entry of default (Docs. 17, 19), and Plaintiff voluntarily dismissed with prejudice his claims against Kojigian on May 10, 2018 (Docs. 24, 25).

On August 1, 2018, Plaintiff filed a motion for default judgment against Defendant, which is currently pending before the Court. (Doc. 27.)

**III.      DISCUSSION**

**A.    Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3)

the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.     Analysis**

    **1.     The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.     Possibility of Prejudice to Plaintiff**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendant participates and makes an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("prejudice" exists where the plaintiff has no "recourse for recovery" other than default judgment). Therefore, Plaintiff would be prejudiced if the Court were to deny its motion. This factor weighs in favor of default judgment.

        **b.     Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought.

*See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability" in places of public accommodation. 42 U.S.C. § 12182(a). "Discrimination" is defined as a failure to remove "barriers . . . where such removal is readily achievable." *Id*. at § 12182(b)(2)(A)(iv); *see also Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 945 (9th Cir. 2011) (en banc). Where a barrier's removal is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable." 42 U.S.C. § 12182(b)(2)(A)(v).

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her [or his] disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). Further, "[t]o succeed on an ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable." *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1085 (D. Haw. 2000).

According to the complaint, Plaintiff is "substantially limited in his ability to walk, "must use a wheelchair for mobility," and he is thus "physically disabled" as defined by the applicable California and federal laws. (Doc. 1, ¶ 8.) As a grocery store, the Property is a facility of public accommodation, does not function as a residence, and its activity affects commerce. (Doc. 1, ¶ 9.) Plaintiff alleges that Defendant owns, operates, or leases the Property; thus, he is allegedly liable for the Property's compliance with the ADA. (Doc. 1, ¶ 7.)

Plaintiff visited the Property on or about September 9, 2017, and alleges that Defendant failed to provide barrier-free access to the Property because the walkway between the designated accessible parking space and the entrance to the Property was too narrow. (Doc. 1, ¶ 10 (Plaintiff's

settlement with Damian and dismissal of Kojigian resolved Plaintiff's request for injunctive relief for the other barriers alleged in the Complaint, *see* Doc. 27-1 at 7).)

Plaintiff alleges that the removal of this architectural barrier is readily achievable, or alternatively, the services could have been made available through alternative methods that were readily achievable. (Doc. 1, ¶¶ 21-22.) As these facts are taken as true regarding Defendant following its entry of default, Plaintiff has met his burden of stating a *prima facie* Title III discrimination claim.

Pursuant to the Unruh Civil Rights Act, all persons are "entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal Civ. Code, § 51(b). Additionally, no business establishment of any kind whatsoever shall discriminate against any person in California on account of disability. Cal. Civ. Code, § 51.5. The Unruh Act also incorporates an individual's rights under the ADA by reference, such that a violation of the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code, § 51(f). Here, Plaintiff alleges that Defendant denied him full and equal accommodations, advantages, facilities, privileges and services in a business establishment based on his disability. (Doc. 1, ¶ 38.) Further, because Plaintiff's complaint properly alleges a *prima facie* claim under the ADA, Plaintiff has also properly alleged facts establishing the necessary elements for an Unruh Civil Rights Act claim.

California Health and Safety Code, § 19955, mandates that all public accommodations constructed in California comply with the requirements of California Government Code, § 4450. Pursuant to Section 4450, "all buildings, structures, sidewalks, curbs, and related facilities, construed in this state by the use of state, county, or municipal funds, or the funds of any political subdivision of the state shall be accessible to and usable by persons with disabilities." Cal. Gov. Code, § 4450(a). Additionally, non-exempt public accommodations constructed prior to July 1, 1970, and later altered or structurally repaired, are required to comply with the same requirements of the California Health and Safety Code. Cal. Health & Safety Code, § 19959.

For purposes of pleading his claim, Plaintiff incorporates his prior allegations regarding the barrier he encountered at the Property (Doc. 1, ¶ 42), and further alleges that the Property is a public

5

accommodation "constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the [Property] was not exempt under the Health and Safety Code § 19956" (Doc. 1, ¶ 45). Although substantially boilerplate, this claim is sufficiently pled. *See Loskot v. D & K Spirits, LLC,* No. 2:10-cv-0684-WBS-DAD, 2011 WL 567364 at *3 (E.D. Cal. Feb. 15, 2011) (noting that, although "plaintiff's complaint is largely boilerplate, it is sufficient to support the requested relief" under the ADA for purposes of default judgment). *See also Gutierrez v. Leng*, No. 1:14-CV-01027-WBS, 2015 WL 1498813, at *4 (E.D. Cal. Mar. 31, 2015) (same).

While Plaintiff's allegations in his Complaint are generic as to all defendants, and Defendant is the only defendant remaining, defendants are jointly and severally liable for ADA violations in any of these capacities. *See Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000). Accordingly, Defendant alone may be held liable for Plaintiff's counsel's time, costs, and statutory damages. The complaint sufficiently states Plaintiff's claim under Title III of the ADA, the Unruh Civil Rights Act, and California Health and Safety Code, § 19955, and there appears to be merit to the substantive allegations. As such, these *Eitel* factors weigh in favor of default judgment.

### c. The Sum of Money at Stake in the Action

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of granting default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594-JSW, 2007 WL 1545173 at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $2,587.86, which includes attorney's fees and costs.[1] This is not a relatively large sum of money, nor does it appear unreasonable, subject to the deductions set forth below.

### d. The Possibility of a Dispute Concerning the Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the

---

[1] Plaintiff requests statutory damages in the amount of $4,000.00 and attorney's fees and costs in the amount of $3,682.00, for a total of $7,682.00. (Doc. 27-1 at 10.) Plaintiff further requests that this amount be subject to an offset of $5,094.14, the amount received in settlement with Damian. (*See id*.) Thus, the net monetary award requested by Plaintiff is $2,587.86.

6

allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to contradict the well-pleaded allegations in the complaint. *See United Specialty Insurance Co. v. Saleh*, No. 1:16-cv-00632-DAD-MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Accordingly, this factor favors entry of default judgment.

### e. Whether Default Was Due to Excusable Neglect

Defendant failed to file a responsive pleading or oppose Plaintiff's motion for default judgment. The Court has no evidence before it establishing that Defendant's failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### f. Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case. In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

## 2. Terms of the Judgment and Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages and the terms of the judgment sought by Plaintiff.

### a. Injunctive Relief

Plaintiff's Complaint and motion for default judgment seek an injunction requiring Defendant to make several changes and accommodations at the Property. (Doc. 1, ¶ 10; Doc. 27-1 at 6–7.) As the factual allegations in the complaint are taken as true, Plaintiff is entitled to injunctive relief as requested pursuant to both state and federal law. *See Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) ("Damages are not recoverable under Title III of the ADA – only injunctive relief is available for violations of Title III.").

### b. Statutory Damages

The Unruh Civil Rights Act provides for, among other things, a minimum statutory damages amount of $4,000 per violation. Cal. Civ. Code § 52(a); *Grove v. De La Cruz*, 407 F. Supp. 2d

1126, 1133 (C.D. Cal. 2005) (the Unruh Act "provides for statutory damages up to a maximum of three times the actual damages but no less than $4,000 for each instance of discrimination"). A violation of the ADA constitutes a violation of the Unruh Act. As such, Plaintiff asserts that he is entitled to $4,000 in statutory damages pursuant to the California Civil Code § 52(a). (Doc. 1, ¶ 40.)

Plaintiff has sufficiently alleged facts indicating that he visited the Property on or about September 9, 2017, and encountered barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property. (Doc. 1, ¶¶ 10–11.) Thus, Plaintiff is entitled to an award of $4,000 in statutory damages.

### c. Attorney's Fees and Costs of Litigation

Pursuant to 42 U.S.C. § 12205, a party that prevails on claims brought under the ADA may recover reasonable attorney's fees and costs, in the court's discretion. California Civil Code, § 55, also provides for attorney's fees and costs for obtaining injunctive relief; section 54.3 provides fees for recovery of damages to enforce the "full and equal access" guaranteed to disabled persons by Section 54.1.

Attorney's fee awards are calculated using the lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Ninth Circuit has explained the lodestar approach as follows:

> The lodestar/multiplier approach has two parts. First a court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. [*See D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990); *Hensley v. Eckerhart*, 461 U.S. 424,] 461 (1983)]. The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *See Hensley*, 461 U.S. at 433.
>
> A district court should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Id.* at 434. Second, a court may adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. [Footnote omitted] *See Blum v. Stenson*, 465 U.S. 886,

898-901 (1984) (reversing upward multiplier based on factors subsumed in the lodestar determination); *Hensley*, 461 U.S. at 434 n.9 (noting that courts may look at "results obtained" and other factors but should consider that many of these factors are subsumed in the lodestar calculation). The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts" that the lodestar amount is unreasonably low or unreasonably high. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-901); *Blum*, 465 U.S. at 897; *D'Emanuele*, 904 F.2d at 1384, 1386; *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1989).

*Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041,1045 (9th Cir. 2000).

Here, Plaintiff seeks an award of $3,127.50 for total billable time spent on the case by the Mission Law Firm, as well as $554.50 for costs and litigation expenses. (Doc. 27-1 at 8-10.) Specifically, Plaintiff requests (1) $1,380.00 for 4.6 hours of work expended by Zachary M. Best, Esq., at an hourly rate of $300; (2) $1,035.00 for 9.0 hours spent by paralegal Whitney Law at an hourly of $115; and (3) $712.50 for 7.5 hours spent by paralegal David Guthrie at an hourly rate of $95. (Doc. 27-1 at 10.)

### i. Mr. Best's Time Expended and Hourly Rate

Regarding the number of hours expended by Mr. Best, the Court finds that the amounts claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is unreasonable and should be reduced. *See Gonzalez*, 729 F.3d at 1202 ("The prevailing party has the burden of submitting billing records to establish that the number of hours it has requested are reasonable."); *see also Moore v. Chase*, No. 1:14-cv-01178-SKO, 2016 WL 3648949, at *4 (E.D. Cal. July 7, 2016) (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

Numerous entries throughout the billing statement reflect time spent reviewing the civil new case documents that are issued in every case filed in this Court, returned summonses, and brief orders of the Court:

| **Date** | **Activity** | **Time Spent** |
| --- | --- | --- |
| 11/20/2017 | Reviewed civil new case docs issued by court | 0.10 (6 minutes) |
| 12/1/2017 | Review summons returned executed on Damian | 0.10 (6 minutes) |

9

| | | |
|---|---|---|
| 1/12/2018 | Review order granting extension for Damian | 0.10 (6 minutes) |
| 1/29/2018 | Review summons' returned executed on Sadik and Kojigian | 0.10 (6 minutes) |
| 2/8/2018 | Review order continuing scheduling conf | 0.10 (6 minutes) |
| 3/16/2018 | Review defaults of both landlords | 0.10 (6 minutes) |
| 5/3/2018 | Review order continuing MSC | 0.10 (6 minutes) |
| 7/11/2018 | Review minute order continuing scheduling conf and setting deadline for filing motion for default | 0.10 (6 minutes) |
| | **Total:** | **.8 hours (48 min.)** |

(Doc. 27-2, Declaration of Zachary M. Best ("Best Decl.") ¶ 7 and Exh. A.)

When considering the time entries in total, the amount of time spent essentially reviewing the docket is unreasonable, particularly given the substance of the communications and docket entries. While reviewing short Court orders does take some time, billing judgment must be exercised in the accumulation of billing entries of this type. Based on the activities recorded in reviewing routine, simple documents, the Court finds that only 0.40 hours (24 minutes) of the time billed on the above-listed activities is reasonable; thus, a reduction of 0.40 hours is warranted. *See Hensley*, 461 U.S. at 433-34 (hours requested may be reduced where expenditure of time deemed excessive, duplicative, or otherwise unnecessary); *see also*, *e.g.*, *Trujillo v. Ali*, No. 1:16-cv-00694-LJO-SKO, 2016 WL 6902313, at *6 (E.D. Cal. Nov. 23, 2016) (reducing the time billed for similar activities reviewing short Court orders).

With regard to the hourly rate to be charged for Plaintiff's lead counsel, Mr. Best, Plaintiff requests $300. (Doc. 27-1 at 9.) Plaintiff asserts that Mr. Best has 24 years' experience, of which twelve has been spent specializing in ADA litigation, and he "began exclusively representing plaintiffs in ADA matters approximately one year ago." (Best. Decl. ¶¶ 2–5.) As Mr. Best's declaration states, he "has successfully briefed and argued many cases before the California Court of Appeals." (*Id*. ¶ 4.) He usually bills at $550 per hour, but has reduced his hourly rate in this case to $300. (*Id*. ¶ 6.)

Courts generally calculate the hourly billable rates according to the prevailing market rates in the relevant legal community. *Blum*, 465 U.S. at 895. In general, courts use the rates of attorneys practicing in the forum district, here, the Eastern District of California, Fresno. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (1993); *Davis v. Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991). The fee applicant bears the burden of producing sufficient evidence that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11.

Mr. Best asserts an hourly rate of $300 has been found reasonable for his work in another ADA case in the Fresno division of this District, citing *Acosta v. Le*, Case No. 1:17-cv-01008-LJO-BAM, 2018 WL 417263, at *6 (E.D. Cal. Jan. 16, 2018), and should be awarded here. (Doc. 17-1, (8:19-23.) As it finds no basis to depart from the determination in *Le* that an hourly rate of $300 for Mr. Best is reasonable, the Court recommends that Plaintiff be awarded the sum of $1,260.00 for work performed by Mr. Best.[2] *See Le*, 2018 WL 417263, at *6. *See also Trujillo v. Lakhani*, Case No. 1:17–cv–00056–LJO–SAB, 2017 WL 1831942 at *8 (E.D. Cal. May 8, 2017) (finding $300 a reasonable hourly rate for Mr. Best's time expended in a similar ADA action).  hourly rate for Mr. Best's time expended in this action).

### ii. Paralegal Rate and Time Expended

Plaintiff seeks compensation for 9.0 hours expended by paralegal Whitney Law at $115 per hour and 7.5 hours expended by paralegal David Guthrie at $95 per hour. (S*ee* Docs. 27-1 at 9–10.) This Court has previously found that the requested rates of $115 per hour for paralegal Whitney Law and $95 per hour for paralegal David Guthrie were reasonable and appropriate for this local community. *See Trujillo v. Singh*, Case No. 1:16–cv–01640 LJO–EPG, 2017 WL 1831941, at *3 (E.D. Cal. May 8, 2017). The Court will therefore apply those hourly rates, respectively, for the time expended by paralegals Whitney Law and David Guthrie. *See Le*, 2018 WL 417263, at *6 (E.D. Cal. Jan. 16, 2018).

---

[2] This amount consists of the amount of time billed by Mr. Best (4.6 hours) minus the Court-recommended reduction in time spent in excessive or duplicative tasks (.4 hour), for an adjusted time of 4.2 hours multiplied by Mr. Best's requested hourly rate of $300 per hour.

1 Regarding the number of hours expended by Ms. Law, the Court finds that the amounts
2 claimed by Plaintiff for certain tasks are reasonable; however, some of the time expended is
3 unreasonable, duplicative, and should be reduced. Ms. Law reported spending a total of 3.5 hours
4 (210 minutes) preparing the motion for entry of default judgment and supporting documents
5 between July 10 and August 1, 2018. (Doc. 27-4, Declaration of Whitney Law ("Law Decl.) ¶ 4
6 and Exh. A.) The motion for default judgment filed in this case is nearly identical to motions for
7 default judgment filed by the Mission Law Firm in other actions before this Court. The Court will
8 therefore deduct 1.8 hours from Ms. Law's time, totaling two hours spent by Mr. Best and Ms. Law
9 in preparing the motion for default judgment. *See Gutierrez v. Leng*, No. 1:14-CV-01027-WBS-
10 SKO, 2015 WL 1498813, at *9 (E.D. Cal. Mar. 31, 2015) ("Accordingly, the Court finds that one
11 hour of [attorney] time and one hour of Whitney Law's time is sufficient to prepare the motion [for
12 default judgment].") (quoting *Moore v. E-Z-N-Quick*, No. 1:13-cv-01522-LJO-SAB, 2014 WL
13 1665034 (E.D. Cal. Apr. 24, 2014)).

14 With respect to the number of hours expended by Mr. Guthrie, the Court finds that the
15 amounts indicated for certain tasks are reasonable; however, some of the time expended is
16 unreasonable and duplicative and therefore should be reduced. On December 1, 2017, Mr. Guthrie
17 recorded 0.30 hours (18 minutes) to receive a proof of service, review it for accuracy, file it using
18 the Court's electronic case filing (ECF) system, and calendar the answer due date. (Doc. 27-5,
19 Declaration of David Guthrie ("Guthrie Decl.) ¶ 4 and Exh. A.) On January 11, 2018, Mr. Guthrie
20 recorded 0.50 hours (30 minutes) to receive and review a half-page stipulation signed by Damian
21 extending the answer date, to file the stipulation, and to email a copy of the proposed order to the
22 Court. (*Id*.) Mr. Guthrie recorded 0.30 hours (18 minutes) on January 12, 2018, to review the
23 Court's one-sentence order granting the stipulation, to email the order to Damian, and to file the
24 proof of service. (*Id*.) On January 22, 24, and 29, 2018, Mr. Guthrie spent a total of 0.90 hours (54
25 minutes) reviewing two proofs of service for accuracy, filing them, and calendaring answer dates.

26 Mr. Guthrie's time of 120 minutes, or 2.0 hours, for review of simple proofs of service and
27 short stipulations, for reviewing the Court's one-line orders, for filing documents using the Court's
28 ECF system, and for emailing documents to opposing parties is excessive. *See Hensley*, 461 U.S.

at 433–34. The Court finds that only 0.60 hours of the time expended by Mr. Guthrie on these activities is reasonable; thus, a reduction of 1.4 hours is warranted. *See Acosta v. Down Town Car Wash, Inc.*, Case No. 1:16–cv–01856–LJO–SKO, 2017 WL 2210245, at *8 (E.D. Cal. May 19, 2017).

Accordingly, the Court recommends Plaintiff be awarded 7.2 hours of time expended by Ms. Law at an hourly rate of $115, and 6.1 hours of time expended by Mr. Guthrie at an hourly rate of $95, for a total of $1,407.50.

### iii. Litigation Expenses and Costs

Plaintiff seeks to recover costs in the amount of $554.50. (Doc. 27-1 at 9–10; Best Decl. ¶¶ 10–11 and Exhs. B & C.) In Section 12205 of the ADA, Congress authorized a district court, in its discretion, to allow the prevailing party other than the United States to recover a reasonable attorney's fee, including litigation expenses and costs. 42 U.S.C. § 12205. The costs here include expenses for the court filing fee and costs of service, which are compensable pursuant to 42 U.S.C. § 12205. Accordingly, it is recommended that Plaintiff be awarded the sum of $554.50 for litigation expenses and costs.

### d. Joint and Several Liability

In general, under both federal and California state law, liability among defendants for a successful plaintiff's attorney's fees is generally joint and several. *Turner v. Dist. of Columbia Bd. of Elections & Ethics*, 354 F.3d 890 (D.C. Cir. 2004) (joint and several liability for attorney's fees awarded under 42 U.S.C. § 1988 for all non-fractionable claims against defendants); *Cal. Trout, Inc. v. Super. Ct.*, 218 Cal. App. 3d 187, 212 (1990) (awarding attorney's fees under Cal, Code of Civ. Proc., § 1021.5, noting that liability for the fees among defendants was joint and several); *Corder v. Gates*, 947 F.2d 374 (district court did not err in refusing to apportion attorney's fees among defendants in awarding fees under Section 1988).

Under the ADA, prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The express terms of the ADA hold a landlord and a tenant liable for noncompliance with the Act. *Botosan*,

13

216 F.3d at 832. In *Botosan*, the appellate court noted that the legislative history of the ADA supports this construction of the statute:

> This [provision] makes it clear that the owner of the building which houses the public accommodation, as well as the owner or operator of the public accommodation itself, has obligations under this Act. For example, if an office building contains a doctor's office, both the owner of the building and the doctor's office are required to make readily achievable alterations. It simply makes no practical sense to require the individual public accommodation, a doctor's office for example, to make readily achievable changes to the public accommodation without requiring the owner to make readily achievable changes to the primary entrance to the building.
>
> Similarly, a doorman or guard to an office building containing public accommodations would be required, if requested, to show a person who is blind to the elevator or to write a note to a person who is deaf regarding the floor number of a particular office.
>
> The amendment also clarifies that entities which lease public accommodations are covered by the requirements of this title.

*Botosan*, 216 F.3d at 832 (quoting H.R. Rep. No. 101-485(III), at 55-56 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 478-79).

Here, Plaintiff asserts that Defendant and Damian were in a landlord-tenant relationship. (*See* Doc. 27-1 at 2 n.1, 4; Best. Decl. ¶¶ 12, 14.) As such, liability for failure to comply with the ADA is joint and several. To the extent Defendant and Damian had an agreement to allocate responsibility for compliance with the lease—of which there is no evidence before the Court—each defendant still remains responsible for ADA compliance. *Botosan*, 216 F.3d at 832-34. As defendants are jointly and severally liable for damages and fees awarded under the ADA, it is appropriate to award damages and attorney's fees against Defendant despite that Damian has settled separately with Plaintiff.[3] Furthermore, no apportionment of the attorney's fees has been sought as Defendant has defaulted and has failed to oppose Plaintiff's motion for default judgment.

Additionally, courts have awarded attorney's fees against one defendant for plaintiff's counsel's time spent litigating against another defendant. *See Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010) (citing *Californians for Responsible Toxic Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 979 (1989)). Thus, in recommending an award of attorney's fees against Defendant,

---

[3] Plaintiff is not seeking any fees or costs related to his previously-dismissed claims against Kojigian. (*See* Doc. 27-1 at 4; Best Decl. ¶ 13.)

14

the Court finds no basis to apportion the fees for Plaintiff's counsel's work spent litigating against Defendant only.

Finally, Plaintiff has requested that the damages and fees against Defendant be offset by the $5,094.14 settlement amount paid by Damian. (*See* Doc. 27-1 at 6, 10; Best Decl. ¶ 14.) Such an offset is appropriate where there is joint and several liability, and an offset of $5,094.14 is recommended. *See generally Velez v. Roche*, 335 F. Supp. 2d 1022, 1042-43 (N.D. Cal. 2004) (offset may be awarded where settlement and award against which offset is sought were (1) for the same injury and (2) the injury is indivisible such that there is joint and several liability among the settling and non-settling defendants) (citations omitted).

### e. Conclusion

For the reasons set forth above, the Court recommends Plaintiff be awarded the following fees:

| Professional | Hourly Rate | Hours | Total |
|---|---:|---:|---:|
| Mr. Zachary M. Best | $300 | 4.2 | $1,260.00 |
| Ms. Whitney Law | $115 | 7.2 | $828.00 |
| Mr. David Guthrie | $95 | 6.1 | $579.50 |
| | | **Total Fees** | **$2,667.50** |

Additionally, Plaintiff should be awarded $554.50 for the costs of suit, and $4,000 in statutory damages. Plaintiff also requests that Defendant be granted an offset in the amount of $5,094.14. Thus, the total award of damages, fees, and costs (including the offset) recommended is $2,127.86.

### IV. RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, it is HEREBY ORDERED that the hearing on Plaintiff's motion for default judgement (Doc. 27) set for September 5, 2018, is VACATED.

The Court RECOMMENDS that:

1. Plaintiff's motion for default judgment (Doc. 27) should be GRANTED IN PART;
2. Judgment be entered in Plaintiff's favor and against Defendant Ali Sadik;

| | | |
|---|---|---|
| 1 | 3. | Plaintiff be awarded statutory damages in the amount of $4,000; |
| 2 | 4. | Plaintiff be awarded attorney's fees in the amount of $2,667.50 (4.2 hours at $300 per hour), paralegal fees in the amount of $1,407.50 (7.2 hours at $115 per hour and 6.1 hours at $95 per hour), and costs of suit in the amount of $554.50; |
| 5 | 5. | Defendant Ali Sadik be awarded a $5,094.14 offset for the settlement amount paid by Juan Damian dba El Parian Grocery Mart, for a net award of $2,127.86; and |
| 7 | 6. | Defendant Ali Sadik be ordered to modify the Property known as El Parian Grocery Mart, located at 3804 East Butler Avenue, Fresno, CA 93702, such that it is brought into compliance with the accessibility requirements of the Americans with Disabilities Act and California Code of Regulations, Title 24, as follows: provide proper clear width of the exterior walkway at the Property. |

Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to Defendant Ali Sadik at his last known address and file with the Court proof of service within two (2) business days of the date of this order.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**August 29, 2018**__             /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE